**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 13-cv-01493-PAB-KLM

aioTV Inc.,

        Plaintiff,

v.

Aio Wireless LLC,

        Defendant.

---

**DEFENDANT AIO WIRELESS LLC'S MEMORANDUM
OF LAW IN SUPPORT OF MOTION TO STAY, DISMISS OR, IN THE
ALTERNATIVE, TRANSFER CASE TO THE NORTHERN
DISTRICT OF GEORGIA PURSUANT TO THE "FIRST-FILED RULE"**

---

Of counsel:
Linda Goldstein, Esq.
Manatt, Phelps & Phillips LLP
7 Times Square
New York, New York 10036
Telephone:	(212) 790-4500
Facsimile:	(212) 790-4545
Email: lgoldstein@manatt.com

Chad S. Hummel, Esq.
Manatt, Phelps & Phillips LLP
11355 W. Olympic Blvd.
Los Angeles, California 90064
Telephone:	(310) 312-4000
Facsimile:	(310) 312-4224
Email: chummel@manatt.com

Darren W. Saunders, Esq.
Manatt, Phelps & Phillips LLP
7 Times Square
New York, New York 10036
Telephone:	(212) 790-4500
Facsimile:	(212) 790-4545
Email: dsaunders@manatt.com

**Attorneys for Defendant**
Aio Wireless LLC

**TABLE OF CONTENTS**

                        **Page**

INTRODUCTION ................................................................................................................ 1

FACTS ................................................................................................................................. 2

    A.     The Parties ..................................................................................................... 2

    B.     The Parties' Pre-filing Communications ..................................................... 3

    C.     The Georgia Action....................................................................................... 5

    D.     The Colorado Action..................................................................................... 6

LEGAL ARGUMENT.......................................................................................................... 7

    E.     The First-Filed Rule Compels This Court To Stay This Action.............................. 7

            1.     The Issues in the Colorado and Georgia Action Overlap
Completely ........................................................................................ 9

            2.     No Exception to the First-Filed Rule Exists Here ................................. 10

    F.     Alternatively, This Court Can Dismiss the Colorado Action or Transfer it
to the Northern District of Georgia  in View of the First-Filed Georgia
Action........................................................................................................... 11

CONCLUSION................................................................................................................... 11

i

## TABLE OF AUTHORITIES

**Page**

### CASES

*Buzas Baseball, Inc. v. Board of Regents of University System of Georgia*,
  Dkt. No. 98-4098, 1999 U.S. App. LEXIS 21630 (10th Cir. Sept. 2, 1999) ........................... 10

*Cadle Co. v. Whataburger of Alice, Inc.*,
  174 F.3d 599 (5th Cir. 1999) ............................................................................................... 7

*Cessna Aircraft Co. v. Brown*,
  348 F.2d 689 (10th Cir. 1965) ......................................................................................... 1, 2

*Cherokee Nation v. Nash*,
  724 F. Supp. 2d 1159 (N.D. Okla. 2010) ............................................................................ 8

*Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc.*,
  713 F.2d 1477 (10th Cir. 1983) ..................................................................................... 8, 10

*Cont'l Grain Co. v. Barge FBL-585*,
  364 U.S. 19 (1960) ............................................................................................................ 2

*Ed Tobergte Assocs., Inc. v. Zide Sport Shop of Ohio, Inc.*,
  83 F. Supp. 2d 1197 (D. Kan. 1999) ............................................................................... 7, 8

*Gschwind v. Cessna Aircraft Co.*,
  161 F.3d 602 (10th Cir. 1998) ............................................................................................ 7

*Hospah Coal Co. v. Chaco Energy Co.*,
  673 F.2d 1161 (10th Cir. 1982) .......................................................................................... 7

*Kerotest Mfg. Co. v. C-O-Two Fire Eqpt. Co.*,
  342 U.S. 180 (1952) ........................................................................................................... 7

*O'Hare Int'l Bank v. Lambert*,
  459 F.2d 328 (10th Cir. 1972) ......................................................................................... 1, 7

*Pierce v. Shorty Small's of Branson Inc.*,
  137 F.3d 1190 (10th Cir. 1998) ........................................................................................ 11

*Sandoz, Inc. v. Pfizer, Inc.*,
  Dkt. No. 09-cv-02457-CMA-MJW, 2010 U.S. Dist. LEXIS 11724 (D. Colo. Feb. 8,
  2010) .................................................................................................................................. 7

*Sherwin-Williams Co. v. Holmes County*,
  343 F.3d 383 (5th Cir. 2003) ........................................................................................... 11

*United States Fire Ins. Co. v. Goodyear Tire & Rubber Co.*,
  920 F.2d 487 (8th Cir. 1990) ........................................................................................... 10

*Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.*,
  679 F. Supp. 2d 1287 (D. Kan. 2010) ............................................................................ 7, 8

### STATUTES

28 U.S.C. § 1406(a) .................................................................................................... 1, 11

### RULES

Fed. R. Civ. P. 4(d) .............................................................................................................. 6

Fed. R. Civ. P. 12(b)(3) ........................................................................................................ 1

Pursuant to Federal Rule of Civil Procedure 12(b)(3), 28 U.S.C. § 1406(a) and the "first-filed rule" as followed by the Tenth Circuit, *see Cessna Aircraft Co. v. Brown*, 348 F.2d 689, 692 (10th Cir. 1965), Defendant Aio Wireless LLC ("Aio Wireless") hereby files this memorandum of law in support of its Motion to Stay, Dismiss or, in the Alternative, Transfer Case to the Northern District of Georgia Pursuant to the First-Filed Rule.

## INTRODUCTION

Plaintiff aioTV Inc. ("aioTV") filed the instant case against moving party Aio Wireless on June 11, 2013. The Complaint alleges trademark infringement, unfair competition, trademark disparagement, and dependent violations of state law (the "Colorado Action"). aioTV brought this action five days *after* it had learned that Aio Wireless had already filed a virtually identical case against aioTV in the Northern District of Georgia, asserting mirror image claims seeking declaratory judgment of no trademark infringement, false designation of origin or unfair competition, based on the same operative allegations. *See AT&T Intellectual Property II, L.P. and Aio Wireless LLC v. aioTV, Inc.*, Case No.1:13-cv-1901-JOF (the "Georgia Action"). This case thus requires implementation of the time-honored "first-filed rule."

The rule, as articulated by the Tenth Circuit, provides that "the first federal district court which obtains jurisdiction of parties and issues should have priority and the second court should decline consideration of the action until the proceedings before the first court are terminated." *Cessna Aircraft Co. v. Brown*, 348 F.2d 689, 692 (10th Cir. 1965); *see also O'Hare Int'l Bank v. Lambert*, 459 F.2d 328, 331 (10th Cir. 1972) ("It is well established in this Circuit that where the jurisdiction of a federal district court has first attached, that right cannot be arrested or taken away by proceedings in another federal district court."). The rational for the rule is that "[t]he

1

simultaneous prosecution in two different courts of cases relating to the same parties and issues 'leads to the wastefulness of time, energy and money.'" *Cessna*, 348 F.2d at 692 (*quoting Cont'l Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26 (1960)).

Because the Georgia Action was filed first, and it is beyond dispute that the two cases involve the same principal parties and the same factual and legal issues, Aio Wireless respectfully requests that this Court in the "second-filed" venue stay or dismiss this case or, in the alternative, transfer this case to the Northern District of Georgia for disposition.

## FACTS

### A.   The Parties

In 2012, the entity today known as Aio Wireless was formed to create a new wireless service company to provide simplified service plans to value-conscious customers interested in unlimited talk/text/data plans with no annual contract. In connection with this new project, a brand creation company was engaged to develop a brand name suited for the mission of the new company. After reviewing and researching several candidates, the name "Aio" (pronounced "A-O") was chosen because it expresses the brand personality: "simply, delightfully, more."

Due to the importance of the "Aio" brand name and trademarks, an Aio Wireless affiliate, AT&T Intellectual Property II, L.P., filed applications to register the Aio Marks on the Principal Register of the U.S. Patent and Trademark Office. All of these trademark application have been approved, without protest by any third party including aioTV.

On May 9, 2013, Aio Wireless launched in Houston, Orlando and Tampa, and has since expanded to two additional markets, Jacksonville and Gainesville, Florida. Aio Wireless expects the service to roll out in multiple markets across the United States over the next year.

2

aioTV is an aggregator of "freely available" video content from various sources that packages the content for on-demand TV streaming, and as such, is considered a "middle ware" company that primarily supplies content to wireless providers.  aioTV does not own any federal trademark registrations for its claimed mark "aio," nor has it ever filed any applications with the U.S. Patent and Trademark Office to register its claimed marks.

### B. The Parties' Pre-filing Communications

aioTV sent Aio Wireless a cease and desist letter dated May 13, 2013.  aioTV claimed to own common law trademark rights to the term "aio" and further claimed that the use of "Aio Wireless" for wireless voice, text and data services allegedly infringes its common law trademark.  aioTV concluded its May 13 letter by stating "I suggest AT&T counsel contact the undersigned as soon as possible so that we can understand AT&T's thinking on these marks, and see if this matter can be resolved."  (Declaration of Darren W. Saunders ("Saunders Decl."), Ex. A.)

In response, on May 21, 2013, the undersigned counsel contacted aioTV's counsel by telephone to discuss the allegations in aioTV's letter.  Counsel for aioTV stated that his client recognized that, in view of AT&T's recent launch of its new Aio Wireless business, AT&T will not want to stop using the Aio name.  AT&T's counsel confirmed aioTV's counsel's understanding and invited his client to propose an alternative resolution.  AT&T's counsel stated that it looked forward to hearing back from aioTV.  (Saunders Decl., ¶ 5.)

Thereafter, on May 30, 2013, counsel for Aio Wireless received another letter from aioTV.  The content and tone of this second letter was stronger than the first letter.  In this letter, aioTV warned that "our client is prepared to take aggressive action in connection with AT&T's

unauthorized use of the 'aio' mark," and demanded "AT&T's assurance that it will *immediately* cease and desist from using 'aio' or anything confusingly similar thereto, as a trademark, service mark or trade name in connection with the sale and/or service of wireless devices." (Saunders Decl., Ex. B (emphasis in original).)

In response, on June 3, 2013, counsel for AT&T again telephoned aioTV's counsel to discuss the matter. AT&T's counsel explained the importance of the Aio mark and confirmed that AT&T will not cease use of the Aio Wireless name and Aio service mark and trademark. Counsel for aioTV stated that it was not his client did not want to litigate. (Saunders Decl., ¶ 7.) aioTV's counsel inquired whether there could be a potential business resolution. After discussing the generalities of what such a business proposal might include, counsel for AT&T stated that they would take the concept back to their client to inquire if there was any potential interest. At no time did AT&T ever propose a business resolution or intimate that one was feasible. Moreover, aioTV never gave AT&T a deadline, whether in correspondence or on the telephone, within which AT&T was to comply with its demands to cease and desist use of the Aio mark. (Saunders Decl., ¶¶ 2-7 & Ex. A-B.)

Hence, AT&T was confronted with a situation in which aioTV made serious allegations and threatening demands regarding the Aio Wireless name and mark, but yet it was left with the distinct impression that aioTV had no intention of immediately bringing an action. Accordingly, in view of the importance of the Aio Wireless name and the ongoing roll-out of the Aio Wireless service into new markets, Aio Wireless decided that it needed to file a declaratory judgment action in order to seek a declaration of non-infringement. (Saunders Decl. ¶ 8.)

### C. The Georgia Action

Aio Wireless and AT&T Intellectual Property II, L.P. ("AT&T"), an affiliate that owns the Aio and Aio Wireless trademarks, filed a complaint on June 6, 2013, in the United States District Court for the Northern District of Georgia (the "Georgia Complaint"). (Saunders Decl. ¶ 9 & Ex. C.) In that case, Aio Wireless seeks a declaration that "the trademarks and service marks 'Aio', 'Aio Wireless', 'aio' (Stylized), and 'aio wireless' (Stylized) (collectively, 'Aio Marks'), which are being used in connection with providing wireless voice, text and data services and the sale of related wireless devices and accessories therefor, do not infringe [aioTV's] claimed common law trademarks: 'aio', 'aioTV', 'aio pro', 'aio basic', 'aio cloud' and others." (Saunders Decl. Ex. C, ¶ 1.)

Thus, the Georgia Action seeks a declaratory judgment of: (1) no trademark infringement, (2) no false designation of origin, and (3) no unfair competition. (Saunders Decl. Ex. C, ¶¶ 35-37.) The Georgia Action also seeks a declaration that: (1) aioTV is not entitled to injunctive relief, (2) aioTV has suffered no actual damages or loss of goodwill, (3) Aio Wireless is entitled to use the trademarks at issue, and (4) Aio Wireless is entitled to its costs, expenses and attorneys' fees. (Saunders Decl. Ex. C, Prayer for Relief.)

After Aio Wireless filed the Georgia Complaint on June 6, 2013, its counsel attempted to reach counsel for aioTV as a courtesy to advise him of the filing. (Saunders Decl. ¶ 10.) As counsel was unavailable that day, AT&T's counsel placed another call on the following morning, June 7, 2013, and informed aioTV's counsel of filing the declaratory judgment action in Georgia. (Saunders Decl. ¶ 11.) AT&T's counsel also informed aioTV's counsel that AT&T was willing to explore a potential business resolution, and was willing to provide adequate time for the

5

parties to explore a potential business resolution.  To that end, AT&T's counsel offered aioTV a waiver of service of process such that aioTV would have at least 60 days to respond to the Georgia Complaint, during which time the parties could explore settlement without the undue pressure of litigation.  (Saunders Decl. ¶ 12.)  On the same day, AT&T's counsel forwarded, by email and overnight courier, courtesy copies of the Georgia Complaint and accompanying documents and also a Waiver of Service of Summons form, pursuant to Rule 4(d), Fed. R. Civ. P.  (Saunders Decl. ¶ 13. & Ex. D.)

Aio Wireless served the Georgia Complaint on aioTV only after aioTV filed the Colorado Action, as explained below.  (Saunders Decl. ¶ 15 & Ex. E.)

aioTV has not yet answered the Georgia Complaint.

### D.     The Colorado Action

Five days *after* the Georgia Action was filed, and after AT&T's offer to extend the time for aioTV to answer the Georgia Complaint,  aioTV filed a complaint against Aio Wireless in this Court on June 11, 2013 (the "Colorado Complaint").  (Dkt. No. 1.)  In this case, aioTV principally alleges that Aio Wireless "usurped aioTV's trademark by changing [Aio Wireless'] corporate name to 'Aio' and launched an aggressive advertising and marketing campaign of an 'aio wireless' service that infringes and completely appropriates aioTV's previously established 'aio' trademark." (Colorado Comp., pp. 1-2.)  The Colorado Complaint thus brings essentially the same causes of action and seeks the relief for the same issues AT&T first requested in the Georgia Action.

aioTV served the Colorado Complaint on Aio Wireless on June 12, 2013.  (Saunders Decl. ¶ 16.)

6

## LEGAL ARGUMENT

### E.  The First-Filed Rule Compels This Court To Stay This Action.

The general rule in this Circuit is that when two federal district courts have concurrent jurisdiction, the first court in which jurisdiction attaches has priority to consider the case. *See O'Hare*, 459 F.2d at 331 (holding that the district court erred by denying motion to stay second-filed action until conclusion of first-filed action). Where two actions involving overlapping issues and parties are pending in two federal courts, "there is a strong presumption in favor of hearing the case in the plaintiff's chosen forum. That presumption is overcome only when the private and public interest factors clearly point towards trial in the alternative forum." *Sandoz, Inc. v. Pfizer, Inc.*, Dkt. No. 09-cv-02457-CMA-MJW, 2010 U.S. Dist. LEXIS 11724, *10 (D. Colo. Feb. 8, 2010), *citing Gschwind v. Cessna Aircraft Co.*, 161 F.3d 602, 606 (10th Cir. 1998) (internal citations and quotations omitted); *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 602–604 (5th Cir. 1999) (second court need not determine whether first court has subject matter jurisdiction).

Likewise, the general rule is that the court that first obtains jurisdiction over the parties and the similar issues – here, Georgia – should be allowed to decide venue. *See Hospah Coal Co. v. Chaco Energy Co.*, 673 F.2d 1161, 1164 (10th Cir. 1982), *citing Kerotest*, 342 U.S. at 185; *see also Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.*, 679 F. Supp. 2d 1287, 1296 (D. Kan. 2010) ("the preference is for the court of first-filing to decide the application of the first to file rule"); *Ed Tobergte Assocs., Inc. v. Zide Sport Shop of Ohio, Inc.,* 83 F. Supp. 2d 1197, 1199 (D. Kan. 1999) (staying its proceedings in deference to the first-filed case presenting substantially similar issues).

7

When a second-filed court is presented with a motion to stay or transfer pursuant to the first-filed rule, "[t]he immediate question before the court is not whether jurisdiction and venue are proper in the [second-filed case] or the [first-filed case], but which court should decide those issues." *Id.*

Courts within the Tenth Circuit have determined that the role of the second-filed court is to make the initial determination of whether the rule generally applies, *i.e.*, whether there is sufficient overlap of parties and issues between the two cases. *See Cherokee Nation v. Nash,* 724 F. Supp. 2d 1159, 1167 (N.D. Okla. 2010) (because first-filed rule applied, the court exercised its discretion to transfer to the first-filed court and declined to reach the question of whether an equitable exception to the first-to-file rule existed, which issue could be re-urged in the transferee court). If the second filer argues that an equitable exception to the first-to-file rule applies, a second-filed court within the Tenth Circuit has discretion to either: (a) allow the first-filed court to decide whether an exception applies, or (b) decide for itself whether an exception applies. *Id.* "[T]here is a **preference for allowing the first-filed court to decide** whether an exception applies." *Id.* (emphasis added).

In determining whether the first-to-file rule applies, a court examines three threshold factors: (1) similarity of the issues; (2) similarity of the parties; and (3) chronology of the two actions. *See XTO Energy*, 679 F. Supp. 2d at 1296. Neither the issues nor the parties must be identical for the first-to-file rule to apply; however, they must be substantially similar. *See Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc.*, 713 F.2d 1477, 1485 (10th Cir. 1983). Here, each of those factors indisputably favors a stay of this action.

1. The Issues in the Colorado and Georgia Action Overlap Completely.

The Georgia Action is essentially the same to this action. As illustrated by the chart below, both actions arise out of the same set of operative facts, involve the same primary parties, assert mirror claims relating to the same marks, and seek resolution of the same issues:

|  | **Colorado Action** | **Georgia Action** |
|---|---|---|
| **Same Operative Allegation** | Aio Wireless "usurped aioTV's trademark by changing [Aio Wireless'] corporate name to 'Aio' and launched an aggressive advertising and marketing campaign of an 'aio wireless' service that infringes and completely appropriates aioTV's previously established 'aio' trademark." (Colorado Comp., pp. 1-2.) | Aio Wireless seeks a declaration that "the trademarks and service marks 'Aio', 'Aio Wireless', 'aio' (Stylized), and 'aio wireless' (Stylized) (collectively, 'Aio Marks'), which are being used in connection with providing wireless voice, text and data services and the sale of related wireless devices and accessories therefor, do not infringe [aioTV's] claimed common law trademarks: 'aio', 'aioTV', 'aio pro', 'aio basic', 'aio cloud' and others." (Saunders Decl. Ex. C, ¶ 1.) |
| **Same Causes of Action** | (1) Trademark Infringement under Section 43(a) of the Lanham Act (2) Unfair Competition (3) Trademark Disparagement (4) Violations of the Colorado Consumer Protection Act (5) Unjust Enrichment | (1) No Trademark Infringement under Section 43(a) of the Lanham Act (2) No False Designation of Origin under Section 43(a) of the Lanham Act (3) No Unfair Competition. |
| **Same Requested Relief** | (1) Injunctive Relief (2) Direct and Consequential Damages (trebled) (3) Restitution (4) Fees, Costs, Interest and Expenses | (1) No Injunctive Relief (2) No Actual Damages (3) Aio Wireless is entitled to use the trademarks at issue, and (4) Costs, Expenses and Fes. |
| **Same Parties** | Plaintiff: aioTV Defendant: Aio Wireless | Plaintiffs: Aio Wireless; AT&T Defendant: aioTV |

9

Because it is beyond dispute that there is substantial overlap between the two cases, the principal concerns of inconsistent adjudications and preserving judicial resources compel a stay of this action or, in the alternative, a transfer of the action to the Northern District of Georgia. *Commodity Futures Trading Comm'n*, 713 F.2d at 1485.

2. No Exception to the First-Filed Rule Exists Here

There are no "compelling circumstances" that would preclude application of the first-filed rule in this action. *See United States Fire Ins. Co. v. Goodyear Tire & Rubber Co.*, 920 F.2d 487, 489 (8th Cir. 1990). The Tenth Circuit focuses on the totality of circumstances to determine whether or not a filing was anticipatory. *Buzas Baseball, Inc. v. Board of Regents of University System of Georgia*, Dkt. No. 98-4098, 1999 U.S. App. LEXIS 21630 at *6 (10th Cir. Sept. 2, 1999) (unpublished). For example, "[a] district court may decline to follow the first-to-file rule and dismiss a declaratory judgment action if that action was filed for the purpose of anticipating a trial of the same issues in a court of coordinate jurisdiction." *Id*. at *7.

Aio Wireless' filing of the Georgia Action was not anticipatory. aioTV sent two letters strenuously objecting to Aio Wireless' use of the Aio mark. Aio Wireless twice responded that due to the importance of the Aio mark, and in view of the launch of the Aio Wireless service and the future roll-out to additional markets, it was not going to stop using the Aio Wireless name and marks. (Saunders Decl., ¶¶ 4, 7.) Yet, aioTV's counsel told counsel for Aio Wireless that it preferred not to litigate.

Thus, faced with a written demand that AT&T immediately cease use of the Aio mark, but reasonably concluding that aioTV may not imminently file an action, AT&T was entitled to avail itself of the Declaratory Judgment Act. Indeed, a fundamental purpose of the Act is to

allow potential defendants to resolve a dispute without waiting to be sued. *See, e.g., Sherwin-Williams Co. v. Holmes County*, 343 F.3d 383, 396 (5th Cir. 2003). AT&T's only other choice would have been to wait and see if aioTV initiated litigation, while AT&T continued to roll-out the Aio Wireless service in additional markets throughout the country.

Accordingly, since the Georgia Action is not an anticipatory filing, the first-filed rule applies and this Court should stay, dismiss or transfer the Colorado Action.

### F.     Alternatively, This Court Can Dismiss the Colorado Action or Transfer it to the Northern District of Georgia in View of the First-Filed Georgia Action

A federal court has power to dismiss or transfer a case for improper venue. 28 U.S.C. § 1406(a); *Pierce v. Shorty Small's of Branson Inc.*, 137 F.3d 1190 (10th Cir. 1998). Because essentially the same action, involving the same issues and parties is pending in the Northern District of Georgia, this Court can and should dismiss or transfer the instant action under the first-filed rule.

### CONCLUSION

This case and the Georgia Action are virtually identical. The Georgia Action was filed first. The first-filed rule compels this Court to stay or dismiss this case or, in the alternative, to transfer the case to the Northern District of Georgia to prevent inconsistent judgments, the waste of judicial resources, and the unfair burden of parallel litigation.

                                                 Respectfully submitted,

Dated:  June 14, 2013                                      _____s/Darren W. Saunders, Esq._____
                                                           Darren W. Saunders, Esq.

                                               Manatt, Phelps & Phillips LLP
                                              7 Times Square
                                              New York, New York 10036
                                              Telephone:     (212) 790-4500
                                              Facsimile:      (212) 790-4545
                                              Email: dsaunders@manatt.com

               *Of Counsel*:            Linda A. Goldstein, Esq.
                                              Manatt, Phelps & Phillips LLP
                                              7 Times Square
                                              New York, New York 10036
                                              Telephone:     (212) 790-4500
                                              Facsimile:      (212) 790-4545
                                              Email: lgoldstein@manatt.com

                                              Chad S. Hummel, Esq.
                                              Manatt, Phelps & Phillips LLP
                                              11355 W. Olympic Blvd.
                                              Los Angeles, California 90064
                                              Telephone:     (310) 312-4000
                                              Facsimile:      (310) 312-4224
                                              Email: chummel@manatt.com

                                              **Attorneys for Defendant**
                                              Aio Wireless LLC