**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 13-cv-01493

aioTV Inc.,

                 Plaintiff,

v.

Aio Wireless LLC,

                     Defendant.

---

DECLARATION OF DARREN W. SAUNDERS IN SUPPORT OF DEFENDANT AIO
WIRELESS LLC'S MOTION TO STAY, DISMISS OR, IN THE ALTERNATIVE,
TRANSFER CASE TO THE NORTHERN
DISTRICT OF GEORGIA PURSUANT TO THE "FIRST-FILED RULE"

---

        Darren W. Saunders, for his declaration in support of Defendant Aio Wireless LLC's

("Aio Wireless") Motion to Stay, Dismiss or, in the Alternative, Transfer the Case to the

Northern District of Georgia Pursuant to the "First-Filed Rule," states:

        1.      I am a partner of the firm Manatt, Phelps & Phillips, LLP and one of the attorneys

who represent Aio Wireless in this action.  I was admitted to this Court on March 30, 2001 and

am in good standing.  I have personal knowledge of the facts stated in this declaration.

        2.      Aio Wireless received a cease and desist letter dated May 13, 2013, from counsel

for Plaintiff aioTV Inc. ("aioTV"), Brad Hamilton, sent to David Cho, AT&T' Services, Inc.'s

in-house Trademark Counsel.  A true and correct copy of the May 13, 2013 letter is attached

hereto as **Exhibit A**.

        3.      On May 21, 2013, my partner Linda Goldstein and I called Mr. Hamilton to

discuss the matter.  Mr. Hamilton explained that aioTV is an aggregator of "freely available"

video content from various sources that packages the content for on-demand TV streaming.  Mr. Hamilton described aioTV as a "middle ware" company that primarily supplies content to wireless providers.

4.     Ms. Goldstein and I asked Mr. Hamilton how aioTV believed that the matter could be resolved.  Mr. Hamilton stated that his client recognized that, in view of Aio Wireless' launch, they [Aio Wireless] "are not going to want to stop using the AIO name."  We made clear that this was correct and invited his client to propose an alternative resolution.

5.     We concluded our May 21, 2013 call by stating that, although we did not believe there was any likelihood of confusion, and, therefore, any asserted claim by aioTV was without merit, we were open to a proposal that did not involve ceasing use of the Aio name.  We stated that we looked forward to hearing back from Mr. Hamilton.

6.     On May 30, 2013, I received a second letter from Mr. Hamilton, stating that "AT&T's use of the 'aio' mark constitutes trademark infringement, false designation of origin, and unfair competition in violation of the Lanham Act and my client's common law rights," and warning "our client is prepared to take aggressive action in connection with AT&T's unauthorized use of the 'aio' mark."  aioTV demanded "assurance that [AT&T] will immediately cease and desist from using 'aio', or anything confusingly similar thereto, as a trademark, service mark or trade name in connection with the sale and/or service of wireless devices."  A true and correct copy of the May 30, 2013 letter is attached hereto as **Exhibit B**.  There was no deadline by which to respond in that letter or comply with aioTV's demands.

7.     On June 3, 2013, Ms. Goldstein and I again called Mr. Hamilton.  We explained the importance of the Aio mark to Aio Wireless and affirmed that Aio Wireless will not cease use of the Aio Wireless name or Aio mark.  Mr. Hamilton stated that it was not his client's

choice to file an action to seek an injunction, from which we concluded that aioTV did not have any intention of commencing an action in the foreseeable future. We inquired as to whether aioTV claims to have lost any business as a result of AT&T's use of the name Aio Wireless. Mr. Hamilton stated that his client had not lost any contracts. We further inquired as to whether there was a potential for a resolution of the dispute. Mr. Hamilton mentioned a possible business resolution. In response to our inquiry, Mr. Hamilton provided some general terms, and we told Mr. Hamilton that we would take the concept back to Aio Wireless for its consideration.

8.      In view of the importance of the Aio Wireless name and AT&T's investment therein, as well as the ongoing roll-out of the Aio Wireless service into new markets, and further in view of aioTV's May 30, 2013 letter and Mr. Hamilton's comments, on or about June 4, 2013, Aio Wireless decided to file a declaratory judgment action in order to seek a declaration of non-infringement.

9.      On June 6, 2013, Aio Wireless filed a declaratory judgment action in the Northern District of Georgia, where Aio Wireless is based (the "Georgia Complaint"). A true and correct copy of the June 6, 2013 Georgia Complaint is attached hereto as **Exhibit C**.

10.     Also on June 6, 2013, Ms. Goldstein and I placed two telephone calls to Mr. Hamilton as a courtesy to advise him of the filing. Mr. Hamilton was unavailable to take either of the calls.

11.     On June 7, 2013, Ms. Goldstein and I reached Mr. Hamilton by telephone and advised him of the filing of the action in Georgia. We explained Aio Wireless' reasons for filing the action and made clear that Aio Wireless was still open to a proposed business resolution and that the filing should in no way be taken as a message that settlement is not possible.

3

12.     During our June 7, 2013 call, Ms. Goldstein and I also noted that we had purposefully not yet served aioTV with the Georgia Complaint.  We explained that we did not want to place undue pressure on aioTV and, therefore, we offered aioTV the option of waiving service of process such that it would have a minimum of 60 days to respond to the complaint, instead of 21 days.

13.     Also on June 7, 2013, I followed up with a confirmatory letter to Mr. Hamilton stating, "we wish to reiterate that AT&T is considering a potential business resolution to the matter, but in view of your May 30, 2013 letter, as well as the importance of the 'aio' brand name, our client determined that a judicial determination of its rights is necessary." Enclosed with the letter were courtesy copies of the Georgia Complaint and other documents filed in the action, as well as a Waiver of Service Summons form.  A true and correct copy of my June 7, 2013 letter (without exhibits) is attached hereto as **Exhibit D**.

14.     Without further communication, on June 11, 2013, aioTV filed an action in the District of Colorado (the "Colorado Complaint").

15.     On June 12, 2013, in view of aioTV 's filing and having heard nothing further from Mr. Hamilton, Aio Wireless served the summons and Georgia Complaint on aioTV at 12:43 p.m. Mountain Time.  A true and correct copy of the June 12, 2013 Proof of Service is attached hereto as **Exhibit E**.

16.     Upon information and belief, on June 12, 2013, aioTV served its summons and the Colorado Complaint on Aio Wireless at 2:28 p.m. Mountain Time.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 14th day of June, 2013.
New York, New York

DARREN W. SAUNDERS