# ATTACHMENT 3

# Verified Complaint and Jury Demand

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. _____

aioTV Inc.,

      Plaintiff,

v.

Aio Wireless, LLC,

      Defendant

---

## VERIFIED COMPLAINT AND JURY DEMAND

---

For its verified complaint against Defendant, Plaintiff states and alleges as follows:

### INTRODUCTION

This is an action for trademark infringement and unfair competition in which Plaintiff seeks injunctive relief to terminate Defendant's infringement of Plaintiff's "aio" trademark for wireless services, together with damages, restitution and other legal and equitable relief. The action is brought under Section 43(a) of the Lanham Act, 15 U.S.C. §§ 1025(a), and Colorado law.

This action arises because Defendant, a subsidiary of AT&T, Inc., recently usurped Plaintiff's trademark by changing Defendant's corporate name to "Aio" and launched an aggressive advertising and marketing campaign of an "aio

wireless" service that infringes and completely appropriates Plaintiff's previously established "aio" trademark.

## PARTIES

1.      Plaintiff is a corporation organized and existing under the laws of the State of Colorado with its principal place of business in Centennial, Colorado.

2.      Upon information and belief, Defendant is a Delaware limited liability company having its principal place of business in Atlanta, Georgia.  It is authorized to do business and maintains a registered agent for service of process in Colorado.

## JURISDICTION AND VENUE

3.      This action arises under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and supplemental Colorado law.

4.       This Court has subject-matter jurisdiction over Plaintiff's Lanham Act claim pursuant to 28 U.S.C. §§ 1331and 1338 and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

5.      This Court also has subject matter  jurisdiction over all claims in this action pursuant to 28 U.S.C. §1332(a) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

6.      This Court has personal jurisdiction over Defendant because, upon information and belief, Defendant has transacted business in Colorado and

{JK00487765.1 }

intentionally engaged in tortious activities that are purposely and expressly aimed at Colorado, which is Defendant's domicile and the focal point of the torts, with knowledge that the brunt of the injury from those activities would be felt in Colorado, and Plaintiff's claims in this action arise out of those business activities and forum-related torts and injuries to Plaintiff.

7.     Venue properly lies in this judicial district pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant is subject to the Court's personal jurisdiction with respect to the present civil action and is therefore deemed to reside in this judicial district, and also because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## GENERAL ALLEGATIONS
(Applicable to all Claims for Relief)

8.     Plaintiff is the developer and owner of a "cloud-based" software service which it markets to customers in Colorado and throughout North America under the distinctive "aio" (pronounced "A-O") trademark, used alone and along with multiple suggestive and descriptive terms, including "aioTV," "MYaio," "aioCloud," "aioPro," and "aioBasic." A copy of Plaintiff's news release announcing the products using these trademarks is attached hereto as Exhibit 1.

9.     Plaintiff's "aioTV" service aggregates multiple sources of video content from a variety of sources such as network and cable television

programming, movies, YouTube®, hulu®, vimeo®, and similar providers of free video content on the Internet and delivers it via a unified portal, providing wireless mobile device and personal computer users having an Internet connection with a unique "television-like" viewing experience.

10.     Michael Earle, who is now Plaintiff's CEO, conceived the idea for "aioTV" in 2009 and financed its early development out of his own funds.

11.     When Plaintiff was incorporated, Mr. Earle and others who worked on the project contributed their rights in the "aio" intellectual property and related assets to Plaintiff in exchange for shares of the company, and Plaintiff became the owner of all of the intellectual property associated with the "aio" trademark, including "aioTV" service.

12.     In January 2010 Plaintiff launched its "aioTV" website offering "aioTV" to the public, began marketing and selling "aioTV" in commerce, and has been using the "aio" trademark in commerce worldwide since that time.

13.     Plaintiff's "aioTV" service has experienced rapid success, widespread customer acceptance, and public recognition throughout the United States and Canada; it is widely installed on Apple ™ wireless devices, including iPhones ™, iPads ™ and iMac ™ personal computers, ANDROID ™ wireless devices, and IP television including the Google TV ™ platform.

Case No. 1:13-cv-01493-PAB-KLM   Document 19-5   filed 07/03/13   USDC Colorado   pg 6 of 45
Case 1:13-cv-01901-JOF   Document 8-4   Filed 07/03/13   Page 6 of 45
Case 1:13-cv-01493-PAB-KLM   Document 1   Filed 06/11/13   USDC Colorado   Page 5 of 21

14.   Plaintiff has two distinct customer groups: (a) consumers who subscribe to "aioTV" service to watch IPTV and other video content across multiple devices, and (b) industry customers such as Google TV and competitors of Defendant who pay Plaintiff license fees allowing them to offer the "aioTV" platform to their wireless phone and Internet customers.

15.   With respect to the first group of customers, "aioTV" service has experienced broad acceptance and rapid growth, increasing from approximately 1500 uses in January 2010 to more than 150,000 users today.

16.   With respect to the second customer group, for example, Plaintiff is in advanced stages of negotiations on distribution agreements with competitors of the Defendant in the wireless mobile device service marketplace.

17.   In addition, Plaintiff has a distribution agreement with Google whereby Google offers the "aioTV" service as a preferred service featured with Google TV.™

18.   The Google TV™ platform has shipped to over one million consumers, all of whom have access to "aioTV" upon activation of the TV, and sales of Google TV™ are anticipated to dramatically accelerate in the next year.

19.   Plaintiff's "aio" brand is a strong, inherently distinctive brand in the wireless marketplace or has acquired a secondary meaning among the relevant trade and public as identifying Plaintiff's wireless service.

{JK00487765.1 }

5

Case No. 1:13-cv-01493-PAB-KLM Document 19-5 filed 07/03/13 USDC Colorado pg 7 of
45
Case 1:13-cv-01901-JOF Document 8-4 Filed 07/03/13 Page 7 of 45
Case 1:13-cv-01493-PAB-KLM Document 1 Filed 06/11/13 USDC Colorado Page 6 of 21

20. Upon information and belief, Defendant is a wholly owned subsidiary of AT&T Inc., the largest telecommunications service provider in the United States (both mobile and fixed), and the 17th largest company in the world.

21. Upon information and belief, in late 2012 Defendant, which was formerly known as AT&T Communications America, LLC, changed its name and adopted Plaintiff's "aio" trademark as part of its company name, thereby identifying itself as the source of wireless services bearing that name.

22. Upon information and belief, Defendant engaged a brand creation company located in Boulder, Colorado to develop a brand name suited for the mission of Defendant. On further information and belief, the Boulder brand creation company suggested, and defendant adopted, the name "aio".

23. On May 9, 2013, Defendant published a news release launching its "aio wireless" service, providing no-contract, pre-paid talk, text and data service to wireless device customers, first in Houston, Texas, and Orlando and Tampa, Florida, which was quickly expanded into Jacksonville and Gainesville, Florida, with an announced plan to extend the service throughout the United States over the next year. A copy of Defendant's news release is attached hereto as Exhibit 2.

24. Defendant's news release proclaims that "Aio (pronounced 'A-O')" is a brand name that "encapsulates" and uniquely describes its wireless services.

{JK00487765.1 }

6

Case No. 1:13-cv-01493-PAB-KLM   Document 19-5   filed 07/03/13   USDC Colorado   pg 8 of
45
Case 1:13-cv-01901-JOF   Document 8-4   Filed 07/03/13   Page 8 of 45
Case 1:13-cv-01493-PAB-KLM   Document 1   Filed 06/11/13   USDC Colorado   Page 7 of 21

25.     Defendant thereby copied and misappropriated, and is willfully infringing, the "aio (pronounced 'A-O')" brand that Plaintiff has been using to distinguish its "aioTV" service since at least 2010.

26.     Also, on or about May 9, 2013, Defendant went live with a new website for its "aio wireless" service at www.aiowireless.com, a copy of which is attached hereto as Exhibit 3.

27.     The look and feel of Defendant's "aio wireless" website copied the look and feel of Plaintiff's "aioTV" website as it existed up until March 27, 2013, a copy of which is attached hereto as Exhibit 4.

28.     Defendant thereby copied and misappropriated, and is willfully infringing, the distinctive "aio" trademark Plaintiff has been using since at least 2010.

29.     Defendant's website states that its "aio wireless" service includes "My Aio", "Aio Basic," and "Aio Pro" brands as part of the service.

30.     Defendant thereby copied and misappropriated, and is willfully infringing, the "MYaio," "aioBasic," and "aioPro" brands Plaintiff has been using to identify its services since at least January 15, 2010.

31.     Defendant markets and sells its "aio" products and services in the same markets, through the same channels of commerce or trade, and to the same relevant customers as Plaintiff's customers.

{JK00487765.1 }

7

32.     Defendant's infringing actions and false or misleading descriptions or representations of fact, are likely to cause confusion, and have already caused actual confusion, among actual and potential customers as to the affiliation, connection, or association of Defendant with Plaintiff, or as to the origin, sponsorship, or approval of Defendant's services by Plaintiff.

33.     For example, on May 10, 2013 Matt Dannehl of Alcatel Lucent sent Mike Earle an e-mail titled "branching out?", including a copy of a portion of the AT&T May 9, 2013 press release and inquiring whether AIO and AT&T were connected. A copy of the e-mail correspondence is attached hereto as Exhibit 5.

34.     In addition, on or about May 14, 2013, one of Defendant's competing prepaid wireless service providers questioned Mike Earle, Plaintiff's CEO, and expressed concern about the apparent affiliation between Plaintiff and Defendant.

35.     Other customers of Plaintiff have expressed similar confusion and concern about whether Plaintiff has been taken over by Defendant or is now affiliated or otherwise somehow connected with Defendant.

36.     Upon information and belief, at least some if not all of those customers would not do business with Plaintiff if it was known to be connected with Defendant or AT&T.

{JK00487765.1 }

8

Case No. 1:13-cv-01493-PAB-KLM   Document 19-5   filed 07/03/13   USDC Colorado   pg 10 of 45
Case 1:13-cv-01901-JOF   Document 8-4   Filed 07/03/13   Page 10 of 45
Case 1:13-cv-01493-PAB-KLM   Document 1   Filed 06/11/13   USDC Colorado   Page 9 of 21

37.    Defendant's press releases and aggressive and pervasive advertising campaign have resulted in identifying itself, rather than Plaintiff, as the authorized source of the "aio" brand in the minds of a large segment of the public.

38.    For example, before May 9, 2013, a search for the term "aio" on the Google Internet search engine displayed Plaintiff's "aioTV" among the top-ranked, first-page search results; however, after May 9, 2013, Defendant's "aio wireless" replaced Plaintiff's "aioTV" as a top-ranked search result and pushed "aioTV" off the first page to a much lower ranking.

39.    Plaintiff's exclusive right to use the "aio" brand in connection with wireless services was well known to Defendant before May 9, 2013.

40.    For example, after Plaintiff began offering its services under the "aio" brand in January 2010, it did an industry launch at the 2010 TelcoTV convention on November 9, 10 and 11, 2010, where Defendant's parent, AT&T had a substantial presence and one of its executives, Steven Wright, was a key note speaker on "IPTV Innovation, Investment, Standards and Interoperability."

41.    Plaintiff also demonstrated its "aioTV" services to Tom Sauer and Jeff Weber of AT&T in 2010, and had ongoing discussions about the service with Tom Sauer in 2010.

{JK00487765.1 }

9

Case No. 1:13-cv-01493-PAB-KLM   Document 19-5   filed 07/03/13   USDC Colorado   pg 11
of 45
Case 1:13-cv-01901-JOF   Document 8-4   Filed 07/03/13   Page 11 of 45
Case 1:13-cv-01493-PAB-KLM   Document 1   Filed 06/11/13   USDC Colorado   Page 10 of 21

42.     Plaintiff's executives have presented at industry conferences and shared panels with AT&T executives at industry events from 2010 until the present time, including the Connected TVS Executive Breakfast on April 17, 2012 at the Renaissance Las Vegas Hotel, sponsored by Plaintiff and where GW Shaw, Assistant VP of U-verse, AT&T was featured speaker. A copy of the Connected TVS brochure is attached hereto as Exhibit 6.

43.     At no time has Defendant sought or received permission or license from Plaintiff to use the "aio" trademark.

44.     Accordingly, Defendant's unauthorized use of "aio wireless" can only be explained as a willful and bad faith infringement of Plaintiff's trademark undertaken with the intent to wrongfully appropriate Plaintiff's brand identification and identify Defendant as the authorized source of "aio" wireless services.

45.     Defendant's use of the brand "aio" for wireless service is likely to cause public confusion, and has already resulted in actual confusion, as to the source of "aio" branded services, falsely implies that "aioTV" and "aio wireless" are affiliated, and that "aioTV" approves of or sponsors "aio wireless" services.

46.     Upon noticing Defendant's unauthorized use of Plaintiff's trademark, on May 13, 2013, Plaintiff, acting through its attorney, sent a letter notifying AT&T of its infringement and requesting Defendant to cease such use, a copy of which correspondence is attached hereto as Exhibit 7.

{JK00487765.1 }

Case No. 1:13-cv-01493-PAB-KLM   Document 19-5   filed 07/03/13   USDC Colorado   pg 12
of 45
Case 1:13-cv-01901-JOF   Document 8-4   Filed 07/03/13   Page 12 of 45
Case 1:13-cv-01493-PAB-KLM   Document 1   Filed 06/11/13   USDC Colorado   Page 11 of 21

47.     In response to that letter, on May 21, 2013, Plaintiff's attorney received a telephone call from Darren Saunders and Linda Goldstein of the New York law firm of Manatt, Phelps, & Phillips, who identified themselves as attorneys for AT&T and said they were conducting a preliminary review of the issues raised in the May 13, 2013 letter.

48.     AT&T's attorneys stated that Defendant had already spent a large sum of money on naming, launch and advertising of "aio wireless" and would not stop using the brand.  They suggested that Plaintiff should submit a different proposal to resolve the problem.

49.     On May 30, 2013, Plaintiff's attorney sent a second letter demanding that Defendant cease its use of the "aio" trademark, a copy of which is attached hereto as Exhibit 8.

50.     In response, on June 3, 2013 Plaintiff's attorney received another call from AT&T's attorneys named in paragraph 47 above, who reiterated the position that Defendant would not cease its use of the "aio" brand and said they would take the structure of a proposed business arrangement in settlement of the infringement up the chain at AT&T, but that due to AT&T's size and structure it would take some time before they could respond to Plaintiff's attorney.

51.     Defendant has thus refused to cease its unauthorized use of Plaintiff's trademark, thereby necessitating the present action.

{JK00487765.1 }

Case No. 1:13-cv-01493-PAB-KLM   Document 19-5   filed 07/03/13   USDC Colorado   pg 13
Case 1:13-cv-01901-JOF   Document 8-4   Filed 07/03/13   Page 13 of 45
Case 1:13-cv-01493-PAB-KLM   Document 1   Filed 06/11/13   USDC Colorado   Page 12 of 21

52.     Plaintiff invested approximately $4,500,000 in the development and launch of its brand, and before Defendant interfered was beginning to reap the rewards of its investment, expanding revenues from $0 at the beginning of 2010 to $1,500,000 today, with projections of over $3 million in revenue for 2013, ramping aggressively to over $15 million in the following 12 months as the "aio" brand and product traction accelerates through sales to customers of Defendant's competitors already either signed or in final stages of contract negotiations.

53.     As a consequence of Defendant's wrongful conduct, Plaintiff has suffered, and will unless that conduct is enjoined by this Court will continue to suffer, great and irreparable loss, damage and injury to its business, reputation and the goodwill value of its "aio" trademark, for which monetary damages alone would not be an adequate remedy

54.     Plaintiff lacks the financial means to conduct the type of multi-million dollar remedial advertising campaign that would be required to counteract and attempt to repair the damage to its business, reputation and the goodwill value of its "aio" trademark that Defendant's wrongful conduct has caused and continues to cause.

{JK00487765.1 }

Case No. 1:13-cv-01493-PAB-KLM   Document 19-5   filed 07/03/13   USDC Colorado   pg 14
of 45
Case 1:13-cv-01901-JOF   Document 8-4   Filed 07/03/13   Page 14 of 45
Case 1:13-cv-01493-PAB-KLM   Document 1   Filed 06/11/13   USDC Colorado   Page 13 of 21

## FIRST CLAIM FOR RELIEF

(Violation of Section 43(a) of the Lanham Act)

55.    The allegations contained in the foregoing paragraphs numbered 1-54 are adopted and incorporated by reference herein.

56.    Plaintiffs "aio" trademark is inherently distinctive or has acquired a secondary meaning among the relevant trade and public as identifying Plaintiff's wireless service.

57.    Defendant's unauthorized use of Plaintiff's "aio" trademark is likely to cause public confusion and deceive customers as to the affiliation, connection, and association of Defendant's services and Plaintiff, and/or as to the origin, or sponsorship, or approval by Plaintiff of Defendant's services.

58.    Defendant's unauthorized use of "aio" in connection with its wireless services constitutes trademark infringement, unfair competition, false designation of origin, and false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a) and Colorado law.

59.    Defendant's ongoing violations of Section 43(a) of the Lanham Act are committed knowingly, willfully, intentionally, and in bad faith.

60.    By reason of Defendant's acts as described above, Plaintiff has suffered and will continue to suffer monetary damages and irreparable harm to the

{JK00487765.1 }

Case No. 1:13-cv-01493-PAB-KLM   Document 19-5   filed 07/03/13   USDC Colorado   pg 15
of 45
Case 1:13-cv-01901-JOF   Document 8-4   Filed 07/03/13   Page 15 of 45
Case 1:13-cv-01493-PAB-KLM   Document 1   Filed 06/11/13   USDC Colorado   Page 14 of 21

value and goodwill of Plaintiff's "aio" trademark, as well as irreparable harm to

Plaintiff's business, goodwill, reputation, and customer relations.

61.    Plaintiff has no adequate remedy at law, and is entitled to preliminary

and permanent injunctive relief against Defendant, because damages to Plaintiff's

goodwill and reputation are irreparable and difficult to ascertain, and will

irreparably continue unless enjoined by this Court.

62.    Plaintiff is also entitled to a monetary judgment against Defendant

awarding Plaintiff compensatory and consequential damages, Defendant's profits,

and compensation for a corrective advertising campaign in amounts to be proven at

trial, plus attorney fees, costs, and expenses.

## SECOND CLAIM FOR RELIEF
(Unfair Competition under Colorado Law)

63.    The allegations contained in the foregoing paragraphs numbered 1-54

are adopted and incorporated by reference herein.

64.    Plaintiff's "aio" trademark is inherently distinctive or has acquired a

secondary meaning among the relevant trade and public as identifying Plaintiff's

wireless product and services.

65.    Defendant's unauthorized use of Plaintiff's "aio" trademark is

deceptive and misleading and is likely to cause public confusion and deceive

customers as to the affiliation, connection, and association of Defendant's services

Case No. 1:13-cv-01493-PAB-KLM   Document 19-5   filed 07/03/13   USDC Colorado   pg 16
Case 1:13-cv-01901-JOF   Document 8-4   Filed 07/03/13   Page 16 of 45
Case 1:13-cv-01493-PAB-KLM   Document 1   Filed 06/11/13   USDC Colorado   Page 15 of 21

and Plaintiff, and/or as to the origin, sponsorship, or approval of Defendant's services by Plaintiff.

66.     Defendant's acts as described above constitute unfair competition under the common law of the State of Colorado.

67.     At all times relevant hereto, Defendant's acts of unfair competition were committed intentionally, willfully, knowingly, maliciously, and with reckless disregard of Plaintiff's rights.

68.     By reason of Defendant's acts as described above, Plaintiff has suffered and will continue to suffer monetary damages and irreparable harm to the value and goodwill of Plaintiff's "aio" trademark, as well as irreparable harm to Plaintiff's business, goodwill, reputation, and customer relations.

69.     Plaintiff has no adequate remedy at law, and is entitled to preliminary and permanent injunctive relief against Defendant, because damages to Plaintiff's goodwill and reputation are irreparable and difficult to ascertain, and will irreparably continue unless enjoined by this Court.

70.     Plaintiff is also entitled to judgment against Defendant awarding Plaintiff direct and consequential damages in an amount to be proven at trial, plus attorney fees, costs, and expenses.

Case No. 1:13-cv-01493-PAB-KLM   Document 19-5   filed 07/03/13   USDC Colorado   pg 17
of 45
Case 1:13-cv-01901-JOF   Document 8-4   Filed 07/03/13   Page 17 of 45
Case 1:13-cv-01493-PAB-KLM   Document 1   Filed 06/11/13   USDC Colorado   Page 16 of 21

## THIRD CLAIM FOR RELIEF
(Trademark Disparagement under Colorado Law)

71.     The allegations contained in the foregoing paragraphs numbered 1-54 are adopted and incorporated by reference herein.

72.     Plaintiff had established "aio" as a trademark for wireless data, video and IPTV services prior to Defendant appropriating and adopting that brand as its corporate name and advertising and marketing "aio" as its own trademark for wireless services.

73.     In this connection Defendant published the false statements described above to Plaintiff's customers or potential customers, which, coupled with the disparity in size between the companies and the voluminous advertising use of "aio" by Defendant, conveyed the implication that Defendant had the exclusive right to the use of "aio" as a trademark and that Plaintiff was using that trademark illegally.

74.     These false statements could reasonably be understood to cast doubt upon or create confusion about the validity of Plaintiff's "aioTV" trademark and create the appearance of dishonesty and wrongful conduct by Plaintiff.

75.     In publishing these false statements, Defendant acted with malice, intending to vex, injure, intimidate or annoy Plaintiff.

76.     These false statements had an adverse economic effect on Plaintiff's

{JK00487765.1 }

16

Case No. 1:13-cv-01493-PAB-KLM   Document 19-5   filed 07/03/13   USDC Colorado   pg 18
Case 1:13-cv-01901-JOF   Document 8-4   Filed 07/03/13   Page 18 of 45
of 45
Case 1:13-cv-01493-PAB-KLM   Document 1   Filed 06/11/13   USDC Colorado   Page 17 of 21

business and have irreparably harmed its reputation within the trade and with the public.

77.     By reason of Defendant's misrepresentations, Plaintiff has suffered and will continue to suffer monetary damages and irreparable harm to the value and goodwill of Plaintiff's "aio" trademark, as well as irreparable harm to Plaintiff's business, goodwill, reputation, and customer relations.

78.     Plaintiff has no adequate remedy at law, and is entitled to preliminary and permanent injunctive relief against Defendant, because damages to Plaintiff's goodwill and reputation are irreparable and difficult to ascertain, and will irreparably continue unless enjoined by this Court.

79.     Plaintiff is also entitled to judgment against Defendant awarding Plaintiff direct and consequential damages in an amount to be proven at trial, plus attorney fees, costs, and expenses.

## FOURTH CLAIM FOR RELIEF
(Violations of Colorado Consumer Protection Act)

80.     The allegations contained in the foregoing paragraphs numbered 1-54 are adopted and incorporated by reference herein.

81.     Defendant's knowing and unauthorized use of Plaintiff's "aio" trademark, which wholly appropriates it, constitutes a false representation as to the source, sponsorship, or approval of Defendant's product or service and

{JK00487765.1 }

17

Case No. 1:13-cv-01493-PAB-KLM   Document 19-5   filed 07/03/13   USDC Colorado   pg 19
of 45
Case 1:13-cv-01901-JOF   Document 8-4   Filed 07/03/13   Page 19 of 45
Case 1:13-cv-01493-PAB-KLM   Document 1   Filed 06/11/13   USDC Colorado   Page 18 of 21

Defendant's affiliation, connection, or association with Plaintiff, and Defendant has thereby engaged, and continues to engage, in deceptive trade practices within the meaning of C.R.S. § 6-1-105(1)(b) and (c).

82.   These false representations occurred and continue to occur in the course of Defendant's business.

83.   These false representations significantly impact the public as actual or potential purchasers of Defendant's goods and services.

84.   At all times relevant hereto, Defendant's deceptive trade practices were committed intentionally, willfully, knowingly, maliciously, with reckless disregard of Plaintiff's rights, and in bad faith.

85.   By reason of Defendant's acts as described above, Plaintiff has suffered and will continue to suffer monetary damages and irreparable harm to the value and goodwill of Plaintiff's "aio" trademark, as well as irreparable harm to Plaintiff's business, goodwill, reputation, and customer relations.

86.   Plaintiff has no adequate remedy at law, and is entitled to preliminary and permanent injunctive relief against Defendant, because damages to Plaintiff's goodwill and reputation are irreparable and difficult to ascertain, and will irreparably continue unless enjoined by this Court.

87.   Plaintiff is also entitled to judgment against Defendant awarding Plaintiff direct and consequential damages in an amount to be proven at trial and to

{JK00487765.1 }

Case No. 1:13-cv-01493-PAB-KLM   Document 19-5   filed 07/03/13   USDC Colorado   pg 20
of 45
Case 1:13-cv-01901-JOF   Document 8-4   Filed 07/03/13   Page 20 of 45
Case 1:13-cv-01493-PAB-KLM   Document 1   Filed 06/11/13   USDC Colorado   Page 19 of 21

be trebled pursuant to C.R.S § 6-1-113(2)(a)(iii), attorney fees pursuant to C.R.S.
6-1-113(2)(b), costs, and expenses.

**FIFTH CLAIM FOR RELIEF**
(Unjust Enrichment under Colorado Law)

88.     The allegations contained in the foregoing paragraphs numbered 1-54
are adopted and incorporated by reference herein.

89.     Defendant's use of Plaintiff's "aio" trademark constitutes a benefit
conferred on Defendant by Plaintiff.

90.     Defendant has appreciated or realized the benefit.

91.     Defendant accepted the benefit under circumstances that it would be
inequitable for Defendant to retain the benefit without payment of its value.

92.     Plaintiff is entitled to judgment against Defendant awarding restitution
of the value of the benefit it received, including disgorgement of Defendant's
profits from goods and services sold under the "aio wireless" brand, and awarding
Plaintiff attorney fees, costs, and expenses.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff seeks the following relief against Defendant:

A.     Preliminary and permanent injunctions prohibiting Defendant's use of
the "aio" trademark in connection with advertising and selling wireless goods and
services;

{JK00487765.1 }                              19

Case No. 1:13-cv-01493-PAB-KLM   Document 19-5   filed 07/03/13   USDC Colorado   pg 21
of 45
Case 1:13-cv-01901-JOF   Document 8-4   Filed 07/03/13   Page 21 of 45
Case 1:13-cv-01493-PAB-KLM   Document 1   Filed 06/11/13   USDC Colorado   Page 20 of 21

B.      Judgment awarding Plaintiff direct and consequential damages in treble the amount proven at trial, plus compensation for a corrective advertising campaign; in addition, Plaintiff reserves the right, to amend this complaint to seek an award of exemplary damages pursuant to C.R.S. § 13-21-102(1)(a).

C.      Judgment awarding Plaintiff restitution for the value of the amount of unjust enrichment received by Defendant, including disgorgement of Defendant's profits from goods and services sold under the "aio" brand;

D.      Judgment awarding Plaintiff attorney fees, interest, costs, expenses, and such additional relief as the Court deems appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury of all issues so triable in this action.

s/
Edward T. Lyons, Jr.
Daniel A. Wartell
Aaron D. Goldhamer
JONES & KELLER, P.C.
1999 Broadway, Suite 3150
Denver, CO 80202
(303) 573-1600
Fax (303) 573-8133
elyons@joneskeller.com
Attorneys for Plaintiff

Case No. 1:13-cv-01493-PAB-KLM   Document 19-5   filed 07/03/13   USDC Colorado   pg 22 of 45
Case 1:13-cv-01901-JOF   Document 8-4   Filed 07/03/13   Page 22 of 45
Case 1:13-cv-01493-PAB-KLM   Document 1   Filed 06/11/13   USDC Colorado   Page 21 of 21

STATE OF COLORADO   )
          ) ss.
CITY & COUNTY OF DENVER )

  MICHAEL EARLE, being first duly sworn upon his oath, deposes and states: that he is the Chief Executive Officer of Plaintiff aioTV Inc.; that he has read the foregoing Verified Complaint and Jury Demand and knows the contents thereof; and that the facts stated therein are true and correct to the best of his knowledge, information and belief.

            Michael Earle

Subscribed and sworn to before me this 11th day of June, 2013

My commission expires: _March 16, 2014_

            Notary Public

{JK00487717.1 }



Product    Service Providers    Applications    About Us                    Contact Us

Posted on March 21, 2012                              ← Previous    Next →

# aioTV launches aioCloud and aioPro, enabling Providers to offer a branded OTT experience in 24 hours at no cost

aioTV launches aioCloud and aioPro, enabling Providers to offer a branded OTT experience in 24 hours at no cost

Denver, CO — March 21, 2012 - aioTV announced today the availability of aioCloud, enabling service providers to deliver a branded OTT TV experience on multiple devices in 24 hours with no capital or on-going operational cost. aioTV also announced aioPro, enabling Providers to customize and integrate their licensed content as a logical follow on to aioCloud.

The new offerings enable Providers to immediately offer consumers a branded OTT experience with aioCloud. aioCloud aggregates freely available main stream video and special interest long form internet video into a compelling consumer experience.

"The challenge for Providers is how to deliver persistent brand loyalty across all platforms in a market where people are consuming internet video on connected devices and where broadband transport has become an invisible utility judged on price and availability," said Mike Earle, CEO of aioTV Inc. "What we've heard from Providers is they are not getting any credit for carrying internet video traffic and that they are looking for a economically sound solution". "We challenged ourselves to deliver a branded solution within a day, to address Provider's key questions of where do I start? how do I start? and how do I so at no cost? aioCloud is the answer".

aioPro is the next step from aioCloud, giving access to powerful back office tools allowing Providers to integrate content, customize the experience and tailor the offerings.

Providers can get into the branded OTT market today by going to http://aiocloud.aio-tv to get their own OTT service now.

About aioTV Inc.
aioTV Inc. is the leading OTT cloud video aggregation platform serving customers worldwide. The company's flagship products aioCloud and aioPro are enabling platforms for service providers, consumer electronics manufactures and media companies designed to curate multiple sources of video content into a TV like experience for customers to enjoy on multiple devices. aioTV aggregates long form video content from the web (OTT) and licensed content (VOD, TV Everywhere VOD, even linear channels) into a user experience that looks like TV middleware and runs on iPad, Android tablets, PC, MAC, GoogleTV, iPhone, Android phones, Android set top boxes and Amino set top boxes.

aioTV Inc.
Jim Anderson
720.442.5086
janderson@aio-tv.com | www.aio-tv.com

This entry was posted in News by aioTV. Bookmark the permalink.



Products          Applications                    303_482_1140   info@aio-
aioTV             Content Upload Partner          tv.com
Service Providers OTT Delivery
Getting Started   TV Everywhere
                  Content Management/Syndication
                  About Us                        aioTV Inc (USA)   aioTV (Canada)
                  About aioTV
                  News
                  Events
                  Product Data Sheet
                  Schedule a Demo

© Copyright 2012. All rights reserved.                   About Us   Contact Us

| About Us | News | Wireless | Network | Innovation | U-verse | Business | Investor Relations | Site Map | Search |

News Release Archives

## Aio Wireless™ Announces New Nationwide Voice and Data Service

**No-annual-contract wireless provider kicks off new service with launch in first three markets**
**Alpharetta, Georgia, May 09, 2013**

Share:

**News Sources**

About Us
RSS News Releases
RSS Podcasts
AT&T news

**Tags**

financial

Today Aio Wireless announced the launch of a new nationwide wireless service for consumers interested in a first-class wireless experience at a value price, without an annual contract. Aio provides new choices, seamless customer experience, and simplified service and offerings to value-conscious customers interested in an unlimited talk/text/data plan with no annual contract.

Aio expects the service to roll out in multiple markets across the U.S. over the next year, with an initial launch today in select stores in Houston, Orlando and Tampa, and with additional stores in these three markets opening in the coming weeks. Store locations and Aio information will be available at www.aiowireless.com. Aio (pronounced "A-O") is a brand name that encapsulates Aio's brand promise: simply, delightfully, more.

"We talked with no-annual-contract customers and created our service around what they want. They want simple, easy plan choices with unlimited offers; first-class service at affordable prices; great devices; nationwide voice and data coverage; and no annual contracts. Today's wireless customers don't want to compromise," said Jennifer Van Buskirk, president of Aio Wireless. "We are set up to win over value-conscious customers who are increasingly moving towards smartphones and mobile broadband."

Aio makes prepaid wireless easy for customers with a friendly in-store and on-line experience, three simple rate plans to choose from, and an attractive portfolio of devices that include smartphones, tablets, and feature phones from a variety of manufacturers, including Samsung, Nokia, ZTE and others. Aio's unlimited talk, text, and data rate plans range from $35 to $70 per month, with pricing varying by market, and will offer 4G download speeds of up to 4Mbs per second. Customers will also have the opportunity to bring a compatible, unlocked device for activation on the Aio network. Aio will delight customers with an attitude of gratitude, easy pre-payment options, and an involvement in the local communities in which we serve.

Aio Wireless is a subsidiary of AT&T Inc. (NYSE:T). AT&T does not expect this announcement to change AT&T's January 2013 financial guidance.

*Aio's plan pricing includes applicable state and local taxes, and fees. Each unlimited plan includes a pre-established amount of high speed data access, and service is subject to Aio's Terms and Conditions of Service and Unreasonable Use Policy. Coverage and services are not available everywhere. Restrictions apply. © 2013 Aio Wireless LLC. All rights reserved. Aio, Aio Wireless and the Aio logo are trademarks of Aio Wireless LLC.*

### About Aio Wireless

Aio Wireless (pronounced A-O) was created for today's value-conscious connected consumers who want it all. We created a new class of service for individuals who expect a first class wireless service at a value price - one with no-annual contract, friendly service, uncomplicated plans and the mobile phones and tablets you love. All of Aio's phone plans include unlimited talk, text and data, with taxes and fees included - the price you see is the price you pay. Aio Wireless is a subsidiary of AT&T Inc. Visit www.aiowireless.com to find out more.

### Cautionary Language Concerning Forward-Looking Statements

*Information set forth in this news release contains financial estimates and other forward-looking statements that are subject to risks and uncertainties, and actual results may differ materially. A discussion of factors that may affect future results is contained in AT&T's filings with the Securities and Exchange Commission. AT&T disclaims any obligation to update or revise statements contained in this news release based on new information or otherwise.*



EXHIBIT
2

Case No. 1:13-cv-01493-PAB-KLM   Document 19-5   filed 07/03/13   USDC Colorado   pg 25
of 45
Case 1:13-cv-01901-JOF   Document 8-4   Filed 07/03/13   Page 25 of 45
Case 1:13-cv-01493-PAB-KLM   Document 1-3   Filed 06/11/13   USDC Colorado   Page 1 of 1

EXHIBIT

3

Case No. 1:13-cv-01493-PAB-KLM   Document 19-5   filed 07/03/13   USDC Colorado   pg 26
of 45
Case 1:13-cv-01901-JOF   Document 8-4   Filed 07/03/13   Page 26 of 45
Case 1:13-cv-01493-PAB-KLM   Document 1-4   Filed 06/11/13   USDC Colorado   Page 1 of 1



Case No. 1:13-cv-01493-PAB-KLM   Document 19-5   filed 07/03/13   USDC Colorado   pg 27
of 45
Case 1:13-cv-01901-JOF   Document 8-4   Filed 07/03/13   Page 27 of 45
Case 1:13-cv-01493-PAB-KLM   Document 1-5   Filed 06/11/13   USDC Colorado   Page 1 of 1

**From:** Dannehl, Matt (Matt) [mailto:matt.dannehl@alcatel-lucent.com]
**Sent:** Friday, May 10, 2013 7:39 AM
**To:** Mike Earle; Chuck Correll
**Subject:** branching out ?

**AT&T launches new prepaid service under 'Aio Wireless' brand**
AT&T Mobility launched a new prepaid brand, Aio Wireless, promising a simplified, no-contract experience and opening up a new front in the prepaid battle with Verizon Wireless, Sprint Nextel and T-Mobile US.
*Fierce Wireless, May 9 2013 5:10PM*

Mike and Chuck
I am assuming this is not connected to AIO and AT&T somehow has copied your name, but with adding "wireless" avoids a lawsuit ?

Hope everything is going well and I hope to wrap up a new path I am pursuing within the next couple weeks and we can touch base on prospects.

Thanks,
Matt


EXHIBIT
5



**FIERCEONLINEVIDEO PRESENTS**

# CONNECTED TVs:
*executive breakfast*

## OPPORTUNITY & UNANSWERED QUESTIONS ABOUT THE FUTURE

**04.17.12 | 7:00 – 8:45 AM | RENAISSANCE LAS VEGAS HOTEL**

Connected TVs will provide service providers, advertisers and content owners deeper analytics that those that are available now. They've helped to create a new outlet for developers whose apps are finding easier entry into consumers' homes through the television set.

And, as this year's CES demonstrated, they look to be one of the hottest CE devices coming to market. In fact, new research from The Diffusion Group suggests that 78 percent of new TV buyers are likely to purchase connected TVs.

FierceOnlineVideo Editor, Jim O'Neill hosted an exclusive executive breakfast at NAB and sat down with top industry executives from Turner Broadcasting, Fox Broadcasting, Google TV, UFC, AT&T, and KIT Digital to discuss the questions that have been left unanswered. Some of the topics discussed include:

- Will there be set-top boxes in the future?
- Will content go directly to consumers over the top, relegating service providers to the role of big pipes? Or will SPs find a way to maintain their customer relationship?
- Will sports programming, which has been a fatted cow for service providers and broadcasters alike, join the revolution and deliver their product directly to viewers for a fee?
- Will CE manufacturers, content owners or some other segment benefit the most from the estimated 138 million connected TVs expected to ship in 2015?

The unique format of the event provided attendees with an opportunity chance to hear what top industry executives really had to say in an uncensored environment.

If you are interested in future Fierce events, please check our website.

## SPEAKERS



**Don Loheide**
VP Advanced Video,
Turner Broadcasting



**Hardie Tankersley**
VP, Innovation,
Fox Broadcasting



**Jay Kellett**
Principal, Business
Development Group,
Google TV



**Christy Kim**
VP Digital,
Technology Research
& Development
Ultimate Fighting
Championship®



**GW Shaw**
Assistant VP
of U-verse, AT&T



**Alex Blum**
Chief Operating
Officer, KIT Digital



**Jim O'Neill**
Editor,
FierceOnlineVideo

**SPONSORED BY**

*Gold Sponsor*

 kitdigital

*Silver Sponsors*

aioTV

NDS

**HOSTED BY**

Fierce ONLINE VIDEO
THE WORLD OF ONLINE VIDEO

**EXHIBIT**
6

Case No. 1:13-cv-01493-PAB-KLM   Document 19-5   filed 07/03/13   USDC Colorado   pg 29
of 45
Case 1:13-cv-01901-JOF   Document 8-4   Filed 07/03/13   Page 29 of 45
Case 1:13-cv-01493-PAB-KLM   Document 1-7   Filed 06/11/13   USDC Colorado   Page 1 of 12



# JONES & KELLER
— ATTORNEYS AT LAW —

BRAD H. HAMILTON                                               BHAMILTON@JONESKELLER.COM

May 13, 2013

AT&T Intellectual Property II, L.P.
645 East Plumb Lane
Reno, Nevada 89502

C/O

David J. Cho
AT&T Services, Inc.
208 S. Akard St.
Dallas, TX 75202-4206

<u>Via Email</u>: david.cho@att.com

Dear Mr. Cho:

　　　　　Re: aioTV Inc.'s "AIO" Trademarks

　　　　We represent aioTV, Inc. ("**AIO**") owner of the "aio", "aioTV," "aio pro," "aio basic,"
"aio cloud," and related trademarks and service marks. AIO has been conducting business
throughout North America using the "aio", "aioTV", "MYaio" and similar marks since at least
early 2010, in the IPTV and wireless data business.

　　　　A few days ago, AT&T launched "aio wireless", using the "aio" mark in a confusingly
similar line of business, and in a manner that is clearly confusing to AIO's brand and trademark
rights. AT&T is well aware of my client's "aio" mark. AIO began offering its services under the
"aio" brand in early 2010, and did an industry launch at the 2010 TelcoTV convention, where
AT&T had a substantial presence and Steven Wright, Chair, IPTV Interoperability Forum ATIS,
AT&T Network Architecture was a key note speaker on "IPTV Innovation, Investment,
Standards and Interoperability." AIO demonstrated its services to Tom Sauer and Jeff Weber of
AT&T in 2010, and had ongoing discussions with Tom Sauer in 2010. AIO executives have
shared panels with AT&T executives at various industry events such as TelcoTV.

　　　　AIO's brand and service offerings have ranked high on the first page of Google® and
other Internet search engines for two years; prior to AT&T's "aio wireless" launch, an Internet
search for "aio" always returned my client as the top result. I assume that AT&T conducted a
trademark search through Thomson Reuters or another service before filing USPTO applications
Nos. 85773612, 85738188, 85718159, & 85773608 for various "aio" marks, which would have
notified you of AIO's rights in the "aio" marks.

---

EXHIBIT
7

AT&T/David Cho
May 13, 2013
Page 2 of 2

Moreover, AT&T has launched a website at www.aiowireless.com that copies the look and feel of AIO's website (prior to a recent change). See Attachment 1.

AT&T has also launched "My AIO," while AIO has been using the "MYaio" mark for a couple of years. See Attachment 2. It appears that AT&T is also launching a number of services under the "aio" brand "Aio Pro," "Aio Smart," and "Aio Basic." My client already uses "aioTV," "aioCLOUD," "aioPRO," and "aioBASIC." See Attachment 3. Naturally, this will cause severe consumer confusion.

Since our clients are sophisticated and represented by counsel I will dispense with the usual case and statute citations and other "cease and desist" form-letter demands. However, it is probably a requirement that I request, on behalf of aioTV Inc., that AT&T cease and desist any further use of the "aio" mark, and notify you that AT&T's use of the identical trademark in connection with nearly the same goods and services that are offered by AIO under its "aio" marks constitutes trademark infringement, false designation of origin, and unfair competition in violation of the federal Trademark Act of 1946 (Lanham Act), 15 U.S.C. Section 1051 et seq.

I suggest AT&T counsel contact the undersigned as soon as possible so that we can understand AT&T's thinking on these marks, and see if this matter can be resolved.

Sincerely,

JONES & KELLER, P.C.

Brad H. Hamilton

Brad H. Hamilton

JONES KELLER

Case No. 1:13-cv-01493-PAB-KLM    Document 19-5    filed 07/03/13    USDC Colorado    pg 31
of 45
Case 1:13-cv-01901-JOF    Document 8-4    Filed 07/03/13    Page 31 of 45
Case 1:13-cv-01493-PAB-KLM    Document 1-7    Filed 06/11/13    USDC Colorado    Page 3 of 12

**ATTACHMENT 1**

Case No. 1:13-cv-01493-PAB-KLM   Document 19-5   filed 07/03/13   USDC Colorado   pg 32
of 45
Case 1:13-cv-01901-JOF   Document 8-4   Filed 07/03/13   Page 32 of 45
Case 1:13-cv-01493-PAB-KLM   Document 1-7   Filed 06/11/13   USDC Colorado   Page 4 of 12



Case No. 1:13-cv-01493-PAB-KLM   Document 19-5   filed 07/03/13   USDC Colorado   pg 33
of 45
Case 1:13-cv-01901-JOF   Document 8-4   Filed 07/03/13   Page 33 of 45
Case 1:13-cv-01493-PAB-KLM   Document 1-7   Filed 06/11/13   USDC Colorado   Page 5 of 12



Case No. 1:13-cv-01493-PAB-KLM   Document 19-5   filed 07/03/13   USDC Colorado   pg 34
of 45
Case 1:13-cv-01901-JOF   Document 8-4   Filed 07/03/13   Page 34 of 45
Case 1:13-cv-01493-PAB-KLM   Document 1-7   Filed 06/11/13   USDC Colorado   Page 6 of 12

**ATTACHMENT 2**

Case No. 1:13-cv-01493-PAB-KLM   Document 19-5   filed 07/03/13   USDC Colorado   pg 35
of 45
Case 1:13-cv-01901-JOF   Document 8-4   Filed 07/03/13   Page 35 of 45
Case 1:13-cv-01493-PAB-KLM   Document 1-7   Filed 06/11/13   USDC Colorado   Page 7 of 12





Case No. 1:13-cv-01493-PAB-KLM   Document 19-5   filed 07/03/13   USDC Colorado   pg 37
of 45
Case 1:13-cv-01901-JOF   Document 8-4   Filed 07/03/13   Page 37 of 45
Case 1:13-cv-01493-PAB-KLM   Document 1-7   Filed 06/11/13   USDC Colorado   Page 9 of 12

**ATTACHMENT 3**

Case No. 1:13-cv-01493-PAB-KLM   Document 19-5   filed 07/03/13   USDC Colorado   pg 38
Case 1:13-cv-01901-JOF   Document 8-4   Filed 07/03/13   Page 38 of 45
Case 1:13-cv-01493-PAB-KLM   Document 1-7   Filed 06/11/13   USDC Colorado   Page 10 of 12



Case No. 1:13-cv-01493-PAB-KLM   Document 19-5   filed 07/03/13   USDC Colorado   pg 39
of 45
Case 1:13-cv-01901-JOF   Document 8-4   Filed 07/03/13   Page 39 of 45
Case 1:13-cv-01493-PAB-KLM   Document 1-7   Filed 06/11/13   USDC Colorado   Page 11 of 12



Case No. 1:13-cv-01493-PAB-KLM   Document 19-5   filed 07/03/13   USDC Colorado   pg 40
of 45
Case 1:13-cv-01901-JOF   Document 8-4   Filed 07/03/13   Page 40 of 45
Case 1:13-cv-01493-PAB-KLM   Document 1-7   Filed 06/11/13   USDC Colorado   Page 12 of 12





## JONES & KELLER
— A T T O R N E Y S   A T   L A W —

BRAD H. HAMILTON                                                    BHAMILTON@JONESKELLER.COM

May 30, 2013

Darren Saunders
Manatt, Phelps & Phillips, LLP
7 Times Square
New York, NY 10036

<u>Via Email</u>: dsaunders@manatt.com

Dear Mr. Saunders:

Re: aioTV Inc.'s "AIO" Trademarks

Further to our telephone conversation last week and your voice message last Friday, our client, aioTV, Inc. ("**AIO**") has asked me to provide the following.

After AT&T's launch of "aio wireless" on May 9, 2013, and after my letter to AT&T dated May 13, 2013, AT&T has commenced and is continuing a very aggressive, well-funded and comprehensive brand marketing campaign surrounding the "aio" mark. The campaign includes aggressive social media brand marketing, primarily focused on the "aio" mark; for example, your client has been very aggressively feeding Twitter using not only the name "aio wireless", but also "aio" alone, as in:

"We are delighted to announce iPhone is available from **Aio** with no annual contract. http://ow.ly/l22ci #HelloAio."

and

**Aio Wireless** @aiowireless                          21 May
How do you #Aio? We'll leave that up to you. #HelloAio
Collapse   Reply   Retweet   Favorite   More

**Aio Wireless** @aiowireless                          9h
Who's been to their local #Aio store? We want to hear from you!
Expand

**Aio Wireless** @aiowireless                          28 May
When we say A, you say #Aio. A!
Expand

> **EXHIBIT**
> 8

Case No. 1:13-cv-01493-PAB-KLM   Document 19-5   filed 07/03/13   USDC Colorado   pg 42
of 45
Case 1:13-cv-01901-JOF   Document 8-4   Filed 07/03/13   Page 42 of 45
Case 1:13-cv-01493-PAB-KLM   Document 1-8   Filed 06/11/13   USDC Colorado   Page 2 of 5

Darren Saunders/ AT&T
May 30, 2013
Page 2 of 5

These are just a few examples. Your client is conducting similar activities on facebook, Instagram, Spotify and other social media. I have also attached photographs of the aio wireless physical stores. It is clear that your client is aggressively branding the word "aio" and "hello aio."

As a result of AT&T's campaign, our client's mark no longer appears prominently in searches for "aio" on Twitter or popular Internet search engines, a position it had enjoyed for several years. In the 15-days since I notified AT&T of its infringement of our client's marks, AT&T's branding campaign has nearly obliterated our client's goodwill and reputation in its "aio" mark. Rather than taking a short pause to assess my client's claims, AT&T has pressed ahead with its branding, indifferent to confusion with my client's marks, and increasingly destroying our client's ability to make effective use of its trademark to identify its service or its company. AT&T has engaged in this course of action despite knowing of my client's "aio" mark for more than two years.

In our phone conversation last week you inquired whether our client might have a proposal to settle this matter. As our client is not the infringing party, it is incumbent upon us to notify you that AT&T's use of the "aio" mark constitutes trademark infringement, false designation of origin, and unfair competition in violation of the Lanham Act and my client's common law rights.

While our client is prepared to take aggressive action in connection with AT&T's unauthorized use of the "aio" mark, we are writing in an effort to resolve this matter by seeking AT&T's assurance that it will *immediately* cease and desist from using "aio", or anything confusingly similar thereto, as a trademark, service mark or trade name in connection with the sale and/or service of wireless devices.

If AT&T has any proposals or suggestions for settling this matter in a different manner, please communicate them to me as soon as possible; unfortunately, AT&T's actions have already virtually destroyed my client's mark, so usual remedial actions would have no value.

Sincerely,

JONES & KELLER, P.C.

Brad H. Hamilton

Brad H. Hamilton

**JONES & KELLER**

Darren Saunders/ AT&T
May 30, 2013
Page 3 of 5



JONES & KELLER

Case No. 1:13-cv-01493-PAB-KLM   Document 19-5   filed 07/03/13   USDC Colorado   pg 44
of 45
Case 1:13-cv-01901-JOF   Document 8-4   Filed 07/03/13   Page 44 of 45
Case 1:13-cv-01493-PAB-KLM   Document 1-8   Filed 06/11/13   USDC Colorado   Page 4 of 5

Darren Saunders/ AT&T
May 30, 2013
Page 4 of 5



Darren Saunders/ AT&T
May 30, 2013
Page 5 of 5



JONES KELLER